UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LOGAN CHARLES RAY, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:18-cv-03462-JMS-MPB |
| CATALENT PHARMA SOLUTIONS, | ) |
| Defendant. | ) |

# ORDER

Plaintiff Logan Ray, who is proceeding *pro se*, worked for Catalent Pharma Solutions ("Catalent") in Bloomington, Indiana for just over two years before voluntarily resigning in October 2018. Mr. Ray then initiated this litigation against his former employer under Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act ("ADA"), claiming that he had been demoted and denied access to training and a promotion based on his Christian beliefs and an alleged disability. The disability claim was dismissed for failure to state a claim upon which relief may be granted, and Catalent has now filed a Motion for Summary Judgment with respect to his remaining religious discrimination claims. [Filing No. 26.] That motion is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted

fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**A. Mr. Ray's Position with Catalent**

Mr. Ray was hired by Catalent, a pharmaceutical company, in August 2016 with the official title of Associate, Manufacturing Drug Product. [Filing No. 27-1 at 8-9; Filing No. 27-2 at 2.] Soon after he began his employment, Catalent underwent restructuring in its Bloomington facility. [Filing No. 27-1 at 12.] As part of the restructuring, the former position of Associate, Manufacturing Drug Product was split into three different positions: Manufacturing Operator, Manufacturing Associate, and Senior Manufacturing Associate. [Filing No. 27-3 at 2.] Employees formerly designated as Associate, Manufacturing Drug Product were placed into one of these three new positions based on the amount of experience they had in the pharmaceutical industry. [Filing No. 27-3 at 2.]

Because Mr. Ray had fewer than three years' experience, he was given the title of Manufacturing Operator. [Filing No. 27-3 at 3-4.] However, Mr. Ray's responsibilities, benefits, hours, pay, and shift stayed the same. [Filing No. 27-3 at 3.] Twenty-four other employees also

had their titles changed from Associate, Manufacturing Drug Product to Manufacturing Operator. [Filing No. 27-3 at 3.] Of the twenty-four others, Mr. Ray had the fewest years of experience in the industry. [Filing No. 27-3 at 3.]

After the title change, Mr. Ray continued to work in a "clean room" – or a room secured to prevent contamination of the manufacturing machines. [Filing No. 27-1 at 9.] Mr. Ray specifically worked in a "filling" clean room and operated machines that filled vials and syringes. [Filing No. 27-1 at 9.] While at Catalent, Mr. Ray received two annual reviews that evaluated his performance in different categories on a scale of unsatisfactory, fair, good, very good, and excellent. [Filing No. 27-2 at 3.] In his first annual review in April 2017, Mr. Ray received a "fair" rating in two of the categories, "initiative/motivation/dependability" and "communications/interpersonal skills," and "good" ratings in the remaining nine categories. [Filing No. 27-2 at 3.] In May 2018, in Mr. Ray's second and final annual review, he received "fair" ratings in the same two categories, but also received "very good" ratings in the categories of "cooperation/attitude" and "ethics and compliance." [Filing No. 27-2 at 3.] He received a rating of "good" in the remaining seven categories. [Filing No. 27-2 at 3.] Mr. Ray's supervisor, Tyler Melchior, considered Mr. Ray's performance to be either below average or average and believed that Mr. Ray needed to improve his performance before being considered for a promotion. [Filing No. 27-2 at 3-4.]

On September 13, 2018, Mr. Ray received a formal disciplinary action for behavior that had been occurring frequently in 2018. [Filing No. 27-2 at 3.] Mr. Ray's misconduct included tardiness, an inability to meet performance expectations, and failing to follow instructions and procedures. [Filing No. 27-2 at 3.] Specifically, Mr. Ray had been taking unauthorized breaks, failing to report to his assigned work location in a timely manner, and declining to attend pre-shift

meetings. [Filing No. 27-2 at 3-4.] The formal action also included a warning that failing to correct this behavior would lead to further discipline, including possibly termination. [Filing No. 27-2 at 4.] Mr. Ray resigned in mid-October 2018. [Filing No. 27-1 at 9.]

### B. Mr. Ray's Religion

Mr. Ray has been a Christian for his whole life. [Filing No. 27-1 at 6.] In late January 2018, Mr. Ray obtained a minister's license through an online application from a nondenominational church called the American Fellowship Church. [Filing No. 27-1 at 6-7.] The title he was given on his "Ordained Minister License" is "Reverend Logan C. Ray." [Filing No. 27-5 at 1.] He stated that the reason he wished to become an ordained minister is because it is the "direction of [his] life." [Filing No. 27-1 at 7.] Mr. Ray has testified that he uses the Reverend title when signing his name on "slightly more important" documents, but has never utilized any of the other benefits such as officiating weddings or special admittance to certain hospitals and prisons. [Filing No. 27-1 at 7-8.] Although Mr. Ray claims that part of the discrimination he suffered was that his co-workers refused to refer to him as "Reverend," he admits that he never asked anyone at Catalent to refer to him by that title. [Filing No. 27-1 at 16.]

When asked to provide a specific example of Catalent being intolerant, Mr. Ray stated that it was intolerant of his beliefs in "all the ways." [Filing No. 27-1 at 12.] When pressed further for an example, Mr. Ray declined to provide one, stating, "No. Can not, will not, won't even try." [Filing No. 27-1 at 12.] When asked about his belief that Catalent is an atheist organization, he stated, "[b]ecause it's true." [Filing No. 27-1 at 13.] Mr. Ray later stated that he knows Catalent is an atheist organization because of "the Bible" and provided a photograph of the cover of a Bible that he owns as evidence. [Filing No. 27-1 at 13.]

Mr. Ray stated that he believes he was not promoted to the Manufacturing Associate position due to his religion. [Filing No. 27-1 at 13.] He claims that he knows this to be the case "[b]ecause it's true." [Filing No. 27-1 at 13.] His direct supervisors, Tyler Melchior and Gabriel Castillo, claim they did not know his religion at the time of Mr. Ray's employment and never spoke of it. [Filing No. 27-2 at 4; Filing No. 27-4 at 3.]

**C. Mr. Ray's Charge of Employment Discrimination with the EEOC**

Before resigning from Catalent, Mr. Ray filed a Charge of Employment Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 21, 2018. [Filing No. 1-1.] In his EEOC Charge, Mr. Ray stated:

> I was demoted from the position of Manufacturing Associate. I have twice applied again to the Manufacturing Associate and was not selected, most recently on or about July 5, 2019. I have been denied access to trainings that I requested from my Team Lead (Gabe Castillo) and Supervisor (Tyler [Melchior]). I received the title of 'Reverend' on or about January 28, 2018 and am not referred to by my legal name in the workplace. Due to the discrimination and harassment, I have lost 50lb and have been hospitalized.

[Filing No. 1-1 at 1.]

On September 25, 2018, the EEOC issued a determination that it was unable to conclude that the information Mr. Ray provided constituted illegal discrimination by Catalent. [Filing No. 1-2 at 1.] The EEOC informed Mr. Ray of his right to file a lawsuit within 90 days of receiving the EEOC notice. [Filing No. 1-2 at 2.]

**D. Mr. Ray's Lawsuit**

Mr. Ray filed a Complaint with this Court on November 8, 2018. [Filing No. 1.] In his Complaint, Mr. Ray alleges that Catalent violated Title VII because it "displayed complete intolerance for Judaic and Christian beliefs and constantly tried to fight me concerning how I

identify and choose to worship." [Filing No. 1.] Catalent has now moved for summary judgment, [Filing No. 26], and that motion is ripe for the Court's decision.

## III.
### DISCUSSION

Catalent argues that Mr. Ray's failure to accommodate claim, in which he alleges that Catalent refused to refer to him as "Reverend," fails because he never asked anyone to call him by that title. [Filing No. 29 at 10.] Catalent also asserts that Mr. Ray has not made a prima facie case of religious discrimination, which requires that the plaintiff provide proof that: "(1) he is a member of a protected class; (2) his job performance met his employer's legitimate expectations; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably by the employer." [Filing No. 29 at 12.] Catalent argues that Mr. Ray cannot establish a prima facie case of religious discrimination because Catalent did not know Mr. Ray's religion, Catalent never took an adverse employment action against him, he did not meet Catalent's legitimate job expectations, and Mr. Ray has not presented any evidence of similarly situated employees being treated more favorably than him. [Filing No. 29 at 13-19.] Catalent also contends that Mr. Ray received substantial training while a Catalent employee. [Filing No. 29 at 17.] Finally, Catalent argues that there are legitimate, non-discriminatory reasons for its employment actions – including that Mr. Ray's job title changed due to restructuring, and that he was not promoted due to poor performance and discipline – and that Mr. Ray cannot show that Catalent's actions were a pretext for discrimination. [Filing No. 29 at 21-25.]

Mr. Ray did not respond to Catalent's Motion for Summary Judgment, instead appearing to consent to the motion. [*See* Filing No. 30 (Mr. Ray stating "Matthew, thank you for your service. I will submit to your summary judgment").]

In its reply, Catalent argues that since Mr. Ray does not oppose the motion, it should be granted. [Filing No. 31.]

Although the Court could summarily rule on Catalent's motion since it is unopposed, S.D. Ind. L.R. 7-1(c)(3)(A), it discusses the motion below.

In general, while Mr. Ray states in conclusory terms that he was discriminated against because of his religion, he has failed to provide any evidence of that being the case. A reasonable factfinder could not conclude that Mr. Ray was discriminated against based on the evidence available to the Court. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("The legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's… religion…caused the discharge or other adverse employment action").

The evidence here, even when viewed in the light most favorable to Mr. Ray, is not enough to withstand Catalent's Motion for Summary Judgment. First, the Court agrees with Catalent that Mr. Ray cannot pursue a failure to accommodate claim if Catalent was unaware of Mr. Ray's accommodation request. *See, e.g.*, *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (in order to succeed on failure to accommodate claim related to religious practice, a plaintiff must show that "the…practice conflicting with an employment requirement is religious in nature, that [plaintiff] called the religious…practice to [his] employer's attention, and that the religious…practice was the basis for [his]…discriminatory treatment"). Since Mr. Ray never asked anyone at Catalent to call him "Reverend," the company cannot be held liable for failing to do so.

The Court also agrees with Catalent that Mr. Ray's disparate treatment claim fails because he cannot make a prima facie case of religious discrimination. First, Catalent did not even know

what religion Mr. Ray practices. *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003) ("It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion…"). Second, Mr. Ray was not subjected to an adverse employment action, since his new position after the restructuring was not a demotion and he was never terminated. Mr. Ray's pay, hours, responsibilities, and benefits did not change after Catalent restructured, and Mr. Ray called it a demotion "in title and nothing else," [Filing No. 27-1 at 13], which is not enough to constitute an adverse employment action under the law. *Maclin v. SBC Ameritech*, 520 F.3d 781, 789 (7th Cir. 2008) ("An employee has not suffered an adverse employment action if [his] title changes but [his] position remains the same in terms of responsibilities, salary, benefits and opportunities for promotion"). Third, Mr. Ray was not meeting Catalent's legitimate employment expectations. He had mediocre reviews, and had been disciplined for tardiness, an inability to meet expectations, and failing to follow instructions and procedures. Finally, Mr. Ray has provided no evidence that similarly situated employees were treated more favorably. He must do more than "merely repeat[ ] that he believes he was treated differently from coworkers" because "personal beliefs are insufficient to give rise to a genuine factual dispute." *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (citation, quotation, and emphasis omitted).

In sum, Mr. Ray must link Catalent's actions to his religion, and he has wholly failed to do so. "Simply being a [certain religion], without something more to link that status to the action in question" is not sufficient. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 900 (7th Cir. 2016). That "something more" is just not present here. Catalent's Motion for Summary Judgment, [Filing No. 26], is **GRANTED**.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Catalent's Motion for Summary Judgment. [26] . Final judgment shall enter accordingly.

Date: 9/30/2019

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via United States Mail to:**

Logan Charles Ray
2382 S. Burberry Ln.
Bloomington, IN 47401

**Distribution via ECF only to all counsel of record**